Pauline Polak, Administratrix, Appellee, v. Chicago
& Alton Railroad Company, Appellant.

Gen. No. 19,972.      (Not to be reported in full.)

Appeal from the Circuit Court of Cook county; the Hon. SAMUEL
C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court
at the October term, 1913. Reversed with finding of fact. Opinion
filed March 23, 1915. Rehearing denied April 8, 1915.

### Statement of the Case.

Action by Pauline Polak, administratrix of the es-
tate of Vojteck David, deceased, plaintiff, against Chi-
cago and Alton Railroad Company, defendant, to
recover damages for the alleged wrongful killing of
plaintiff's intestate.

The accident occurred on Kedzie avenue, a north
and south street, in the city of Chicago, where five
tracks of the defendant's railroad, running east and
west, crossed the street at grade and approximately
at right angles, and happened Sunday afternoon, Octo-
ber 27, 1907, a clear, bright day, about two o'clock.
Commencing at the south the first two tracks were
switch tracks, the next was a main track used by trains
approaching Kedzie avenue from the west, the fourth
was a main track used by trains approaching from
the east, and the fifth was a "lead" track. The usual
air-valve gates were on both sides of the crossing, the
distance between the south gates and the north gates
being seventy-five or eighty feet. A man in a tower,
situated about two hundred feet east of Kedzie avenue
and on the south side of defendant's right of way, oper-
ated both gates simultaneously, two arms crossing the
entire street when the gates were down, another arm
crossing the east sidewalk and another the west side-
walk. Empty coal cars were being switched on the

most northerly track just before the accident and the train was moving back and forth across Kedzie avenue, blocking the street. The locomotive, which was at the front of the train, was west of Kedzie avenue and was headed east. The engineer who was in the cab on the right side, had an uninterrupted view to the south and east.

The first count of the declaration, which was in three counts, alleged, in substance, that the defendant, by its servants, was driving a certain locomotive, and certain passenger coaches attached thereto, along said railroad at or near Kedzie avenue, and, while plaintiff's intestate with all due care was rightfully walking on Kedzie avenue across said tracks, the defendant so negligently manned and controlled its road, guarded the crossing and managed said train, that the train struck plaintiff's intestate, and without fault on his part he was so seriously injured that he died the same day, leaving him surviving his widow and next of kin, etc. The second count charged negligence in driving a "locomotive engine and train of passenger cars backwards across Kedzie avenue" and at "such a high and dangerous rate of speed" that the train struck plaintiff's intestate, who was then and there with all due care rightfully upon said street and tracks for the purpose of crossing the tracks. The third count charged negligence in driving a "locomotive engine" across Kedzie avenue without ringing a bell or sounding a whistle, contrary to the statute, and that in consequence said locomotive struck plaintiff's intestate, who was then and there with all due care rightfully upon said street and tracks.

There was no count charging wilful or wanton negligence. Deceased approached the crossing from the south, walking on the east sidewalk of Kedzie avenue. There were no cars standing on the two switch tracks east of Kedzie avenue, and there were no buildings south of said tracks and immediately east of Kedzie

Polak v. Chicago & Alton R. Co., 192 Ill. App. 115.

avenue. A train approaching from the east on said fourth track could be seen a half a mile away. The testimony is somewhat conflicting as to whether, when deceased reached the crossing, the south gates were up or down, a witness for plaintiff testifying that she was standing on the east sidewalk of Kedzie avenue south of the crossing; that deceased passed her and started to cross the tracks; that at that time the south gates were open, and that later she saw him struck by the train. Six witnesses for defendant testified that this witness had a bad reputation for truth and veracity in the community in which she lived. Plaintiff's witness, a boy nine years old at the time of the accident, testified that he was playing about sixty-five feet *north* of the tracks; that he noticed deceased crossing the tracks, and that the gates were open. He also testified that he saw a freight train strike deceased. Six witnesses for defendant testified that at the time of the accident and for several minutes prior thereto the gates were down.

Deceased passed the south gates and continued to walk north on east sidewalk, looking straight ahead and not at any time looking towards the east. The engineer of the freight train on said fifth track testified that he first observed deceased when deceased was just inside the south gates, which were down; that deceased walked north; that when he reached the freight train he "bumped into" one of the cars, and then stood facing the train in the space between the train and the next track to the south, the fourth track, and made no effort to get off the tracks; and that there was nothing to obstruct his view of the train approaching Kedzie avenue on said fourth track from the time he left the south gates until he was struck. In the meantime a train of empty passenger coaches was approaching from the east on this fourth track. This train was backing west, coaches first, and was running about eight or nine miles per hour. The automatic

bell on the engine in the rear was ringing. The pilot had such control of the train that he could stop it without the assistance of the engineer. The pilot was standing on the west platform of the car farthest from the engine, in the same position as a motorman on a street car, with his hand on the air brake. He testified that he sounded the air whistle at frequent intervals as the train approached Kedzie avenue and that he noticed three men standing at different places immediately south of said freight train between the train and the fourth track. He further testified: "There was room enough between that freight train and my train to permit a man to stand in between. That was done right along. I passed two of the switchmen and I supposed he was the third. The space between the south edge of freight cars and north edge of my cars was probably six feet. * * * He was looking at the cars in the clear of me. As I come in about 15 or 20 feet of him, he stepped back. I whistled and hollered. * * * But he stepped back two steps and corner of car hit him in the side and knocked him down. Car struck back of his head. At that time I had reduced speed of my train considerable. It was not going over two or three miles an hour when it hit him. It ran probably half a car length before stopping. * * * Then I jumped off. * * * No part of my train ran over him. * * * If he had stood still he would not have been struck." The engineer of the freight train also testified that shortly before deceased was struck he leaned out of the cab window and endeavored to direct deceased's attention to the oncoming train but was unsuccessful.

From a judgment for plaintiff for five thousand dollars, defendant appeals.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; EDWARD W. EVERETT and JAMES H. WINSTON, of counsel.

QUIN O'BRIEN, for appellee; MUNSON T. CASE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

### Abstract of the Decision.

RAILROADS, § 738*—*when pedestrian at street crossing guilty of contributory negligence.* Evidence in action to recover damages for alleged wrongful killing of pedestrian at street crossing examined and *held* to show that deceased was guilty of contributory negligence.

---

Morris Feldman et al., trading as Feldman Brothers, Defendants in Error, v. David Bernstein, Plaintiff in Error.

### Gen. No. 20,092.    (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. CHARLES H. BOWLES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Affirmed. Opinion filed March 23, 1915.

### Statement of the Case.

Action by Morris Feldman, Abraham Feldman, Nathan Feldman and Hyman Feldman, trading as Feldman Brothers, plaintiffs, against David Bernstein, defendant.

Defendant by a written contract of guaranty, directed plaintiffs to deliver to J. Kier such goods as Kier might want from time to time, agreeing to become fully responsible to plaintiffs for any balance, either upon open account or promissory notes, which Kier might from time to time owe plaintiffs, not ex-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.